## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                                'O'

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Larry Rabineau<br>Anna Knafo | Thomas Hurrell |

**Proceedings:**      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES (Dkt. 39, filed November 3, 2014)

PLAINTIFFS' MOTION TO AMEND FIRST AMENDED COMPLAINT (Dkt. 54, filed June 25, 2015)

## I.      INTRODUCTION & PROCEDURAL HISTORY

This action arises from the death of James Joe Moreno ("decedent") while in the custody of the Los Angeles County Sheriff's Department ("LACSD"). On August 1, 2013, plaintiffs Jaime A. Moreno ("Moreno"), as the successor in interest and personal representative of decedent's estate, and A.M. ("minor plaintiff"), a minor, by and through his mother and guardian *ad litem* Rosa Ojedo, filed suit in Los Angeles County Superior Court against defendants County of Los Angeles and Does 1-100 (collectively, "the County"). Dkt. 1. Prior to commencing this action, plaintiffs presented their claims to the County of Los Angeles pursuant to California Government Code Section 910, et seq. Id. The County rejected plaintiffs' claims on February 13, 2013, providing plaintiffs with notice that they had six months to file a legal action. Id.

The County removed the action to this Court on October 11, 2013. Id. Pursuant to a stipulation by the parties, plaintiffs filed the operative First Amended Complaint ("FAC") on December 16, 2013. Dkt. 19. The FAC asserts three claims against defendants: (1) placement of decedent among the general inmate population in violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983, and also in violation of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Unruh Civil Rights Act, Cal. Civ. Code § 51 ("Unruh Act"); (2) failure to provide adequate medical care to decedent in violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983, and also in violation of the Bane Act, Cal. Civ. Code § 52.1; and (3) use of excessive force against decedent in violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983.[1]  In brief, this action arises out of allegations that decedent's constitutional rights were violated by unnamed deputies within the LACSD when decedent was assaulted and fatally injured by other inmates while incarcerated at the North County Correctional Facility ("NCCF") on August 27, 2012.

On November 3, 2014, the County filed a motion for summary judgment or, in the alternative, for summary adjudication of issues. Dkt. 39.  Plaintiffs filed an opposition on November 10, 2014.  Dkt. 40.  The County replied on November 17, 2014, and also filed evidentiary objections to much of the evidence submitted by plaintiffs. Dkt. 41.

In addition to opposing the County's motion on the merits, plaintiffs requested a continuance pursuant to Federal Rule of Civil Procedure 56(d).  Specifically, plaintiffs sought additional time to depose two witnesses: Efrain Villeda, an NCCF inmate who allegedly possesses information concerning decedent's cause of death but has been unwilling to testify until released from NCCF, and Arturo Gonzalez, the inmate ultimately charged with decedent's murder.  By order dated December 1, 2014, the Court granted the requested continuance. Dkt. 42.[2]

On June 1, 2015, the Court held another hearing.  Dkt. 50.  In light of the incompleteness of the record, the Court once again continued the hearing on defendants' summary judgment motion.  Id.  The Court advised plaintiffs of the need to complete the

---

[1] Plaintiffs originally asserted claims for violation of Cal. Civil Code §§ 52.7 and 53.  However, during the parties' meet and confer discussions regarding the instant motion, plaintiffs agreed that reference to these provisions in the FAC was made in error.

[2] On May 4, 2015, the County filed an unopposed motion to supplement the factual record, dkt. 47, which the Court hereby GRANTS.  On May 28, 2015, plaintiffs belatedly responded to defendants' aforementioned evidentiary objections, dkt. 48, and defendants subsequently filed a motion to strike these responses, dkt. 49.  The Court DENIES defendants' motion to strike plaintiffs' responses to defendants' evidentiary objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

deposition of Efrain Villeda, and requested that plaintiffs apprise the Court of the status of the criminal prosecution of Arturo Gonzalez. The Court also requested that the County provide the Court with relevant LACSD policies concerning inmate classification and housing placement, and ordered supplemental briefing from the parties addressing the aforementioned evidence and depositions. Id. As of July 13, 2015, the Court is in receipt of the requested supplemental evidence and briefing. Dkts. 51, 56, 58.

On June 25, 2015, plaintiffs also filed a motion to amend the FAC in order to add LACSD deputies John Guadino, Timothy Lovitt, and Christopher Raya as defendants. Dkt. 54. Defendants opposed this motion on July 6, 2015, dkt. 56, and plaintiffs replied on July 13, 2015, dkt. 59. The Court held a hearing on August 3, 2015. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

This action arises out of allegations that decedent's constitutional rights were violated when he was assaulted and fatally injured by other inmates while incarcerated at the NCCF on August 27, 2012. Except where noted, the following facts are not in dispute.

On or about May 22, 2012, decedent was arrested, charged with robbery, and subsequently incarcerated at NCCF in Castaic, California. FAC ¶ 8. Upon being booked, decedent was evaluated by Charles Muse, an LACSD Custody Assistant, on May 24, 2012. Defs.' Statement of Uncontroverted Facts ("DSUF") ¶ 2; Pls.' Statement of Genuine Disputes ("PSGD") ¶ 2. At that time, decedent stated that he lacked a history of psychiatric care, mental illness, or psychiatric hospitalization, and also stated that he did not suffer from any then-present mental health problems. DSUF ¶ 3.[3] Decedent likewise

_____

[3] Plaintiffs dispute this fact, but proffer evidence that does not actually render the fact disputed. PSGD ¶ 2. Specifically, plaintiffs proffer the expert testimony of Dr. Ryan Abbott, who reviewed records of decedent's medical and psychiatric history and states that decedent's family attempted to communicate this history to the County. Id. However, the existence of this medical and psychiatric history does not controvert the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                                    'O'

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

denied taking medication, did not exhibit any bizarre or suicidal behavior, and presented no obvious signs of mental illness. Id. ¶¶ 4,5.[4]

Also on May 24, 2012, decedent was further evaluated during the inmate "classification" phase. Id. ¶ 9; PSGD ¶ 9. Decedent again reported that he did not have suicidal thoughts, denied taking any prescription medication that was needed within the next six hours, and did not report a medical or mental health problem that required immediate attention. DSUF ¶¶ 11,12.[5] Based on this information—as well as decedent's criminal history and his self-reported status as a gang member on probation—decedent was initially classified as "7 High Medium" security level. DSUF ¶¶ 10, 13; PSGD ¶¶ 10, 13. This classification permitted decedent to be housed with the general inmate population, which consists of inmates classified at security levels 5, 6, and 7. DSUF ¶ 17; PSGD ¶ 17. Although decedent's classification was reassessed on June 12, 2012, June 21, 2012, July 16, 2012, and August 6, 2012, his classification remained "7 High Medium" at all relevant times. DSUF ¶¶ 15, 16; PSGD ¶¶ 15, 16. Further, on August 7, 2012, decedent was assessed by Paul Levine, a licensed clinical social worker, who noted that decedent "appeared lucid and/or logical with no mental health complaints" and found that decedent did not meet the criteria for a mental health or psychiatric hold. Levine

---

evidence that, when Muse evaluated decedent on May 24, 2012 at NCCF, decedent denied any such history.

[4] Plaintiffs likewise dispute these facts, but the evidence proffered—again, the declaration of Dr. Abbott—does not establish that Muse's testimony regarding his May 24, 2012 observations are subject to genuine factual dispute. PSGD ¶ 2.

[5] Plaintiffs dispute these facts, and again proffer the declaration of Dr. Abbott in support. PSGD ¶¶ 11, 12. Dr. Abbott's assessment of decedent's medical history has no bearing on whether decedent *reported* this medical history to County employees during the May 24, 2012 evaluation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
| --- | --- | --- | --- |
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Decl. ¶ 4.  The County has no record of any appeal or complaint regarding decedent's classification or housing placement.  DSUF ¶ 20.[6]

On May 29, 2012, decedent was assaulted by unknown Hispanic inmates in Dorm 629 ("the battery").  DSUF ¶ 69; PSGD ¶ 69.  Decedent did not report the battery until deputy sheriffs noticed decedent's injuries on May 30, 2012.  DSUF ¶ 70; PSGD ¶ 70. At that time, decedent was placed in the "620 day room," which appears to be a holding facility, pending investigation into the battery.  DSUF ¶ 71; PSGD ¶ 71.  During the investigation, decedent reported that he was unable to identify his assailants and did not desire to prosecute any of the inmates who had attacked him.  DSUF ¶ 72; PSGD ¶ 72. Following the battery, decedent was removed from the 600 building.  Pls.' Add'l Statement of Facts ("PASF") ¶ 30.  The County has no record of decedent expressing concerns about his safety, warning LACSD employees of any specific threat, or requesting to be separated from any inmates.  DSUF ¶ 76.  Although decedent was never returned to Dorm 629, DSUF ¶ 74, he was returned to Dorm 627 in the 600 building on August 25, 2012, PASF ¶ 20.

At approximately 1:25 p.m. on August 27, 2012, Deputy John Gaudino, who was stationed in the 600 Yard Tower, cleared the inmates in the 600 Yard from a red line that inmates are prohibited from crossing.  DSUF ¶ 23; PSGD ¶ 23.  At approximately 1:30 p.m., Deputy Gaudino saw decedent lying on his back in the 600 Yard; the upper half of decdent's body was over the red line, and Deputy Guadino yelled to get decedent's attention.  DSUF ¶¶ 21, 22; PSGD ¶¶ 21, 22.  At approximately 1:30 p.m., Deputy Guadino radioed two 600 Yard Deputies, Christopher Raya and Timothy Lovitt, and asked them to check on decedent.  DSUF ¶¶ 24, 25; PSGD ¶¶ 24, 25.

---

[6] Plaintiffs proffer evidence that, upon decedent's death, decedent's mother received a copy of certain complaint forms found in decedent's cell and drafted by decedent.  PSGD ¶ 20.  This evidence, however, does not rebut that there is no evidence that any LACSD personnel were informed of these complaints.  This evidence will be discussed in greater detail infra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

When Deputies Raya and Lovitt reached decedent, there were inmates playing basketball approximately 10 to 15 feet away, but there were no other inmates in decedent's direct vicinity.  DSUF ¶¶ 30, 31; PSGD ¶¶ 30, 31.  Deputy Lovitt observed that decedent's eyes were half open, and he saw brownish red mucus coming from decedent's mouth.  DSUF ¶ 32; PSGD ¶ 32.  The two Deputies attempted to gain decedent's attention by tapping on his foot, tugging on his pants, and asking if he was alright.  DSUF ¶¶ 35, 36; PSGD ¶¶ 35, 36.  Decedent was unresponsive.  DSUF ¶ 37; PSGD ¶ 37.  Deputy Lovitt put out radio traffic indicating that there was a "man down" in the 600 Yard, that decedent was unconscious and did not appear to be breathing, and that nurses, firemen, and paramedics were needed.  DSUF ¶¶ 38, 39; PSGD ¶¶ 38, 39.

Approximately one minute after Deputy Lovitt put out the "man down" radio traffic, numerous personnel arrived, including Deputies Garcia and Torres, who began administering CPR to decedent.  DSUF ¶¶ 41, 42.  Plaintiffs dispute these facts.  PSGD ¶¶ 41, 42.  However, plaintiffs do not dispute that four NCCF nurses arrived on the scene at about 1:34 p.m. and began to evaluate decedent and assist the Deputies with CPR.  DSUF ¶ 43; PSGD ¶ 43.  The nurses set up an Automated External Defibrillator, started intravenous therapy and, upon finding a pulse, a Deputy began providing rescue breaths.  DSUF ¶¶ 44-49; PSGD ¶¶ 44-49.  At 1:49 p.m., a team of Los Angeles County Fire Department paramedics arrived, along with two emergency medical technicians, who took over rescue breathing, assessed decedent, and administered chest compressions.  DSUF ¶¶ 50-53; PSGD ¶¶ 50-53.  After rendering aid for approximately twenty minutes, decedent was taken to Providence Holy Cross Medical Center for further treatment.  DSUF ¶¶ 54, 55; PSGD ¶¶ 54, 55.  Decedent was pronounced dead at 2:45 p.m.  DSUF ¶ 58; PSGD ¶ 58.

That same day, detectives from the LACSD Homicide Bureau began investigating decedent's death.  DSUF ¶¶ 60-63; PSGD ¶¶ 60-63.  The investigation revealed that inmate Arturo Gonzalez caused decedent's death.  DSUF ¶ 65; PSGD ¶ 65.  As a result of the investigation, inmate Arturo Gonzalez was charged with decedent's murder on July 30, 2014.  DSUF ¶ 67; PSGD ¶ 67.  The criminal case is ongoing.  DSUF ¶ 68; PSGD ¶ 68.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|--------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Plaintiffs proffer the following additional facts. On June 19, 2011, decedent suffered a head injury as a result of a motorcycle accident. PASF ¶ 1. At the time of decedent's arrest in May 2012, decedent's mother describes decedent's behavior as "child-like." Id. ¶ 3. According to decedent's mother, decedent suffered from severe headaches, struggled with short term memory, and needed assistance with daily living, including taking medication, dressing himself, and driving. Id. ¶¶ 4-6.

Upon decedent's arrest and incarceration at NCCF, decedent's mother avers that she attempted to explain decedent's mental limitations to LACSD personnel both in person and over the phone, and brought decedent's medication—ostensibly for seizures—to court and to the jail. Id. ¶¶ 8-9. Decedent's mother further avers that she was advised by LACSD personnel that all communication regarding decedent's health needed to be conveyed through decedent's attorney. Id. ¶ 10.

Accordingly, on June 13, 2012, Paul Peters, decedent's attorney, sent a letter to the District Attorney's ("DA") office. Id. ¶ 12. In that letter, Peters requested discovery from the DA, and advised the DA that decedent had been involved in a "major auto accident collision that put him in a coma for several weeks," and that Peters had in his possession "multiple medical reports, photographs of injury, prescriptions and medications," related to the collision. Martinez Decl., Ex. N. Peters concluded with a request to "discuss potential resolution of [decedent's] case," and stated that it was "important [to] take the time to review the [decedent's] mental and medical history, which may help explain some of his recent aberrant behavior" leading to decedent's arrest. Id.

While incarcerated at NCCF, decedent's mother avers that she received several letters and phone calls from decedent expressing, among other things, concern for his safety. PASF ¶¶ 14-15. Defendants proffer copies of these letters, which were produced by plaintiffs during discovery. Martinez Decl., Ex. N. In the first letter, dated July 1, 2012, decedent states that he has "a life or death problem," and asks his family to deposit money into the accounts of two other inmates who threatened to beat him to death. Id. at 38-40. As a result, on July 6, 2012, decedent's mother deposited $200 into the account of inmate Julio Rodriguez. Id. at 37 (receipt of deposit); see also PASF ¶ 16. In another

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|-------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

letter, dated July 12, 2012, and addressed to decedent's aunt, decedent states that his "eyes are purple and my nose is bleeding," expresses fear of other inmates, and again asks his family to deposit money into another inmate's account "or I will die." Id. at 41-53.

Soon after decedent's death in August 2012, decedent's mother received a package in the mail containing items found in decedent's cell, including several complaint forms written in decedent's handwriting. Moreno Decl. ¶ 13. In one complaint, which is undated and does not appear to have been submitted to personnel at NCCF, decedent writes that, although he is feeling "very sick," a deputy and nurse ignored decedent's request for his pills. Martinez Decl., Ex. N at 15-19. In another complaint, which is likewise undated and bears no indication that it was submitted to NCCF personnel, decedent states that two deputies called him a "beaner" and "on top of all that they beat me up." Id. at 20-24.

Within a few days of decedent's death, decedent's mother was contacted by Efrain Villeda, another inmate at NCCF. PASF ¶ 22. Villeda told decedent's mother that he believed LACSD was attempting to cover up the true cause of decedent's death; in light of this, decedent's mother requested that Villeda meet with decedent's criminal defense attorney, Paul Peters. Id.; Moreno Decl. ¶ 14. Villeda subsequently provided a recorded statement to Peters on August 31, 2012. Id. ¶ 23. On August 15, 2014, Villeda was deposed by Erin Hallisy, plaintiffs' counsel in the instant action. Id. ¶ 24. During the deposition, Hallisy played a recording of the statement that Villeda had provided to Peters, which Villeda authenticated. Hallisy Decl. Ex. 7 ("Villeda Depo.") at 39:12-17. Villeda, however, declined to discuss his recorded statement with Hallisy. Id. Consequently, Villeda's deposition was continued pending Villeda's release from NCCF. PASF ¶ 26. Ultimately, this continued deposition does not appear to have been taken.

Additionally, plaintiffs proffer the following evidence, which consists of testimony proffered by several inmates during the April 24, 2015 and April 27, 2015 preliminary hearing in the state criminal prosecution of Arturo Gonzalez, decedent's alleged killer. See Defs.' Supp. Br., Martinez Decl., Ex. A (Preliminary Hearing Transcript

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

("transcript")).[7]  As is relevant here, plaintiffs first point to the testimony of inmate Mario Cano.  Pls.' Supp. Material Facts ("PSMF") ¶ 29.  Cano, who was not incarcerated at NCCF on the day of decedent's death but had previously been housed at NCCF, testified that he became familiar with decedent while they were both at NCCF.  Transcript at 36:26-37:5.  Cano testified that he "felt for" decedent, who was "not all there."  Id. at 36:6-10.  When asked to clarify this statement, Cano responded that decedent "was not in his right mind. . . . He just was acting different, I'd say.  That's the best way I can explain it."  Id. at 36:10-13.

Plaintiffs also proffer the testimony of Terrell Thomas, an inmate who was playing basketball on the same NCCF yard where decedent was killed on August 27, 2012.  See PSMF ¶¶ 31,33.  Although Thomas stated that he did not see the fight leading up to decedent's death, he testified that it he witnessed decedent lying on the ground injured for "[p]robably ten, fifteen minutes," before NCCF deputies came to assist decedent, and that "[i]t took them a long time to get there."  Transcript at 27:23-28.

Further, plaintiffs proffer the testimony of NCCF inmates Melvin Haynes and Dajion Vaughns, both of whom deny witnessing the altercation that led to decedent's death, but testify to being percipient witnesses to the events following the altercation. Haynes testified that the altercation was a "whole big old commotion," id. at 51:1-2, the deputy on guard on August 27, 2012 was not "paying attention" to the yard, and decedent was "sitting out there [on the yard] in the sun breathing before [the deputies] put the yard down."  Id. at 54:26-28.  Haynes also testified that decedent was "twitching and shaking before the deputies came," id. at 62:7-8, and that it took "a good three minutes before [the deputies] even noticed [decedent] was on the ground," id. at 62:12-13.  Daijon Vaughns testified that, after inmates "disperse[d]" from decedent's body, the deputies "put the yard down maybe five minutes later."  Id. at 100:3-6.  Dajion also testified to seeing a "gang of movement" on the yard, before seeing decedent lying on the ground.  Id. at 106:20-21.

---

[7] Although plaintiffs proffer relevant portions of the preliminary hearing transcript, the Court refers to the complete transcript, which has been proffered by defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

## III.   LEGAL STANDARD

### A.   Plaintiffs' Motion to Amend the FAC

As a preliminary matter, the Court must decide whether Federal Rule of Civil Procedure 15(a) or 16(b) applies.  Generally, a court grants a motion for leave to amend pleadings pursuant to the permissive standard of Rule 15(a).  Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir.1997).  However, once the district court enters a scheduling order establishing a deadline for amending pleadings, Rule 16(b) applies.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir.2000).  This is because once the scheduling order is in place, the court must modify the scheduling order to permit an amendment.  W. Schwarzer, A. Tashima & M. Wagstaffe, Federal Civil Procedure Before Trial (2006) § 8:405.1 (citing Johnson v. Mammoth Recreations, Inc., 975 F. 2d 604, 609 (9th Cir. 1992)).

Here, the Court has already set a deadline of May 19, 2014, for adding parties and amending pleadings.  Therefore, plaintiffs must demonstrate "good cause" for bringing this motion under Rule 16; then if "good cause" is shown, plaintiffs must demonstrate that amendment is proper under Rule 15(a).

### 1.   Federal Rule of Civil Procedure 16

Rule 16(b)(4) provides that a scheduling order shall be modified "only for good cause."  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  Johnson, 975 F. 2d at 609.  Accordingly, while the court may consider the "existence or degree of prejudice" to the opposing party, the focus of the court's inquiry is upon the moving party's explanation for failure to timely move for leave to amend.  Id.  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir.2002) (quoting Johnson, 975 F.2d at 609).  "The district court is given broad discretion in supervising the pretrial phase of litigation, and its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion." Miller v. Safeco Title Ins. Co., 758 F. 2d 364, 369 (9th Cir. 1985).

### 2.      Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15 provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

Where leave to amend is required, the decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." Jordan v. County of Los Angeles, 669 F. 2d 1311, 1324 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F. 3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F. 3d 815, 818 (9th Cir. 2003)).  "Some courts have stressed prejudice to the opposing party as the key factor." Texaco v. Ponsoldt, 939 F. 2d 794, 798 (9th Cir. 1991).  However, "[u]ndue delay is a valid reason for denying leave to amend." Id. (quoting Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F. 2d 1446, 1454 (9th Cir. 1990)).  But see Bowles v. Reade, 198 F. 3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend.").  Further, "the liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party.  Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." Jordan, 669 F.3d at 1324.  And "[l]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (internal quotation marks and citation omitted).  Delay can contribute to a finding of prejudice because "expense,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|-------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

delay, and wear and tear on individuals and companies count toward prejudice." <u>Id.</u> (internal quotation marks and citation omitted).

### B.    Defendants' Motion for Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>see also</u> Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Id.</u> at 322; <u>see also</u> <u>Abromson v. Am. Pac. Corp.</u>, 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted); <u>Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.</u>, 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                  'O'

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|--------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

## IV.    DISCUSSION

### A.    Plaintiffs' Motion to Amend FAC

Plaintiffs filed the instant motion to amend the FAC in order to add LACSD deputies John Guadino, Timothy Lovitt, and Christopher Raya as named defendants on June 25, 2015—more than a year after the expiration of the May 19, 2014 deadline for adding parties and amending pleadings.  Despite this delay, plaintiffs assert that their motion should be evaluated pursuant to the lenient standard of Rule 15, and do not address defendants' correct assertion that, because the relevant cut-off date has passed, Rule 16 governs plaintiffs' motion.

As discussed above, in order to demonstrate that amendment is proper at this late stage in the litigation, plaintiffs must demonstrate good cause for amendment, a standard that "primarily considers the diligence of the party seeking the amendment." Johnson, 975 F. 2d at 609.  Here, plaintiffs have not demonstrated that they acted with the requisite diligence.  Plaintiffs state that leave to amend should be granted because, "through no fault or mistake of Plaintiffs, the names of the individual defendants were not reasonably known to Plaintiff at the time the complaint was filed."  Mot. Am. at 1.  Plaintiffs misapprehend the nature of the instant motion.  Although the Court does not doubt that plaintiffs were unaware of the names of the individual defendants when they initially filed this action in August 2013, plaintiffs were made aware of the deputies' identities as early as April 14, 2014, when defendants served plaintiffs with their Rule 26 Initial Disclosures.  See dkts. 41-2, 41-3.  These disclosures expressly named Deputies Raya, Guadino, and Lovitt.  Id.  Moreover, as plaintiffs themselves note in their moving papers, Deputies Lovitt, Guadino, and Raya were deposed by plaintiffs on August 7, August 14, and October 27, 2014, respectively.  See Mot. Am. at 10-12.  The Court cannot discern any reason why plaintiffs could not bring a motion to amend their pleadings in order to add these defendants following the completion of these depositions more than nine months ago.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Plaintiffs resist this analysis, asserting that the April 2015 preliminary hearing in the Gonzalez matter provided them with "new evidence," such that justice requires leave to amend. Reply at 1. Although plaintiffs concede that they knew of the deputies' alleged "involvement" in the assault of decedent well before April 2015, id., they contend that inmate testimony at the preliminary hearing to the effect that there was a "big commotion" on the NCCF yard on August 27, 2012, "contradicts" the deputies' testimony, and further, that certain inmate testimony corroborates inmate Villeda's statement that decedent was left on the ground for fifteen minutes before the deputies attempted to render medical assistance. Id. at 1-3. Plaintiffs' arguments miss the mark. Plaintiffs' belief that their case against the named deputies was *strengthened* by the 2015 preliminary hearing testimony does not negate the undisputed fact that plaintiffs were aware of the deputies' alleged involvement in the underlying incident by October 2014, at the latest. Accordingly, because plaintiffs have not demonstrated the diligence required for amendment under Rule 16, their motion to amend is DENIED.[8]

### B.     Defendants' Motion for Summary Judgment

### 1.     Defendants' Evidentiary Objections

Plaintiffs proffer three declarations in support of their opposition to the County's motion. Defendants object to significant portions of each, as well as the exhibits attached thereto. Dkt. 41-13. Defendants likewise filed objections to the evidence proffered by plaintiffs in connection with plaintiffs' supplemental briefing in opposition to the instant motion. Dkt. 58-4.

### a.     Declaration of Reyna Moreno

The County objects to the entire declaration of plaintiff Reyna Moreno, decedent's mother. Defs.' Evid. Object. No. 1. First, defendants object to Moreno's testimony concerning the head injury suffered by decedent in the 2011 motorcycle accident and his

---

[8] In any event, plaintiffs may still proffer evidence of the named deputies' actions or inaction in order to prove their section 1983 claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

mental and physical limitations following the injury, Moreno Decl. ¶¶ 2-6, as either irrelevant, improper expert testimony, improper lay opinion testimony, or lacking in foundation, Defs.' Evid. Object. Moreno Nos. 2-6.  Defendants' objections are OVERRULED.  Moreno's use of the phrase "traumatic brain injury" to describe her son's head injury, as well as her opinion that decedent was "still suffering from the effects" of that injury at the time of his arrest, simply reflects her lay understanding of her son's injury and diagnoses; they are not proffered as either diagnoses or prognoses.  See Fed. R. Evid. 702.  Further, Moreno's testimony concerning her son's physical and mental limitations is based upon personal observation, as is her opinion that her son was "never mentally the same after the accident," and does not constitute improper lay opinion.  See Fed. R. Evid. 701; see also Jones v. Warmee, 225 F.2d 258, 260 (9th Cir. 1955) (lay witnesses are competent to testify to observed pain and suffering caused by injuries).  Moreover, all of this testimony is relevant to plaintiffs' theory of the case that the County was deliberately indifferent to plaintiffs' cognitive limitations.

Second, the County objects to Moreno's statements to the effect that she attempted to explain decedent's medical condition to the County, brought decedent's medication to the jail and to the court, and was advised by unnamed County personnel to contact decedent's attorney—instructions which Moreno avers she followed.  Moreno Decl. ¶¶ 7-9.  The County objects to this testimony as irrelevant, calling for expert opinion, constituting improper lay witness opinion, and containing inadmissible hearsay.  Defs.' Evid. Object. Moreno Nos. 7-9.  Defendants' objections are OVERRULED.  Moreno is qualified to speak to her own actions and the advice Moreno received from County personnel is not hearsay, since it is offered for its effect on Moreno—i.e., that Moreno "followed these employees' instructions," Moreno Decl. ¶ 9—not for the truth of the matters asserted therein.

Third, the County objects to Moreno's statement that, based on her "understanding," Paul Peters sent a letter to the DA's office on June 13, 2012, concerning decedent's medical condition.  Moreno Decl. ¶ 10; Defs.' Evid. Object. Moreno No. 10.  The County's objection is OVERRULED as MOOT, since the Court relies on the letter itself, which the County has introduced into evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Fourth, the County objects to Moreno's statement that decedent wrote letters to her and other family members while he was incarcerated at NCCF, Moreno's description of the contents of those letters, as well as the admission of the letters themselves. Moreno Decl. ¶ 11; Defs.' Evid. Object. Moreno No. 11. The County contends that the contents of these letters constitute inadmissible hearsay. In response, plaintiffs assert that the letters are non-hearsay, since they are offered as circumstantial evidence of decedent's state of mind—namely, that decedent feared for his safety and was in pain. See United States v. Arteaga, 117 F.3d 388, 397 (9th Cir. 1997), as amended on denial of reh'g (July 23, 1997) ("A . . . slightly more esoteric [] category of non-hearsay uses is known—for lack of a catchier name—as 'circumstantial evidence of state of mind.' "). The Court agrees with plaintiffs. Moreover, even though these letters were not shared with LACSD personnel, that decedent felt his life was in danger and suffered ongoing pain may support plaintiffs' assertion that LACSD personnel observed, but ignored, indicia of such fear and pain. Accordingly, defendants' objection is OVERRULED.

Fifth, defendants object to Moreno's statement that she deposited money in another inmate's account in order to keep decedent safe as irrelevant. Moreno Decl. ¶ 12; Defs.' Evid. Object. Moreno No. 12. Defendants' objection is OVERRULED, since this information is relevant to plaintiffs' theory of the case.

Next, defendants object to the following statement, and the exhibits alluded to therein, as irrelevant, speculative, without foundation or personal knowledge, and hearsay:

On August 27, 2012, an officer came to my house late in the evening. He told my husband and me that James suffered a heart attack while playing basketball. This officer later mailed some items that were found in James' cell. I received two complaint forms and I recognized the writing on these documents to be James' writing. These forms stated that James was not getting his medication and the guards ignored him when he told them he was sick. He also wrote that he was physically beaten up by the guards. The complaint forms are attached to the Declaration of Diane Martinez as Exhibit 26 M, P 0304- P 0313.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Moreno Decl. ¶ 13;  Defs.' Evid. Object. Moreno No. 13.  Plaintiffs contend that the contents of decedent's complaints are not hearsay, since they are offered as circumstantial evidence of decedent's state of mind.  The Court agrees.  As noted in connection with decedent's letters, that decedent felt sick and afraid may support plaintiffs' assertion that LACSD personnel observed, but ignored, indicia of such sickness and fear.[9]  The remainder of defendants' objections to the foregoing statement are likewise OVERRULED.  Moreno speaks from personal experience, and the statement of the officer concerning decedent's reported cause of death is not hearsay, since the out-of-court statement is proffered for its falsity, rather than its truth.  See United States v. Anyanwu, 449 F. App'x 639, 641 (9th Cir. 2011) ("Many of the documents were non-hearsay because they were not admitted to prove the truth of the matters asserted, but rather, to prove the very falsity of the assertions made in the documents.").

Finally, defendants object to Moreno's testimony that she received a call from Efrain Villeda a few days after her son's death, that Villeda stated that LACSD deputies were attempting to cover up the cause of decedent's death, and that Moreno and her husband subsequently asked Villeda to meet with decedent's attorney.  Moreno Decl. ¶ 14; Defs.' Evid. Object. Moreno No. 14.  Plaintiffs contend that Villeda's statements are not hearsay because they are not proffered for their truth, but rather, to show that the statement was made, and therefore Villeda's deposition is necessary.  Pls.' Resp. Evid. Object. at 20.  Moreno speaks from personal knowledge, and, insofar as it is offered for the purpose stated by plaintiff, Villeda's statement does not constitute hearsay.  Defendants' objections are accordingly OVERRULED.

---

[9]  To the extent that plaintiffs proffer these complaints to demonstrate that defendants were on notice of their existence, the complaints likewise do not constitute hearsay.  However, the complaints themselves do not indicate that they were ever submitted to County personnel, nor do plaintiffs contend that they were.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
| --- | --- | --- | --- |
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

**b.     Declaration of Erin Hallisy and Exhibits Attached Thereto**

Defendants also object to the entire declaration of Erin Hallisy, attorney for plaintiffs, as well as the deposition transcripts of Efrain Villeda and LACSD Deputy Timothy Lovitt, which are attached thereto.  Defs.' Evid. Object. Hallissy No. 1.

First, defendants raise relevance objections to several portions of Hallissy's declaration which lack merit.  Hallissy Decl. ¶¶ 2, 4-6, 8; Defs.' Evid. Object. Hallissy Nos. 2, 5, 6, 8, 10.  For example, defendants object to Hallissy's statement that she deposed Efrain Villeda.  Hallissy Decl. ¶ 2; Defs.' Evid. Object. Hallisy No. 2.  These objections are OVERRULED.[10]

Second, defendants object to Hallissy's description of the anticipated testimony of Efrain Villeda as speculative.  Hallissy Decl. ¶ 7; Defs.' Evid. Object. Hallissy No. 9.  The Court agrees.  See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").   Accordingly, this objection is SUSTAINED.

Third, defendants object to Hallissy's statement that, during Villeda's August 15, 2014 deposition, Villeda expressed concerns for his safety.  Hallissy Decl. ¶ 3; Defs.' Evid. Object. Hallissy No. 4.  The Court agrees that Hallissy's testimony concerning Villeda's out-of-court-statement constitutes inadmissible hearsay.  Accordingly, this objection is SUSTAINED.

Defendants also object to excerpts from the August 15, 2014 Villeda deposition, which are attached to the Hallissy declaration, as either speculative or hearsay.  Hallissy Decl. ¶ 2, Ex. 7; Defs.' Evid. Object. Hallissy No. 3.  The vast majority of Villeda's August 15, 2014 deposition consists of a recording of Villeda's August 31, 2012

---

[10] Moreover, several of these objections have been mooted by the Court's December 1, 2014 order granting plaintiffs' requested continuance.  See, e.g. Defs.' Evid. Object. Hallissy No. 8 (objecting to Hallissy's description of evidence sought through additional discovery).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|-------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

statement to Paul Peters. In this recording, Villeda testifies that decedent was killed by fellow inmates for "disrespecting" cops, Villeda Depo. at 24:12-15, and states that deputies did not provide medical care to decedent on the day of his death for more than fifteen minutes after decedent sustained his injuries, id. at 21:23-22:2. However, this testimony is preceded by Villeda's admission that he did not see what actually caused decedents' injuries; rather, he saw decedent "laying on the ground" after the injuries had been inflicted. Id. at 13:5-11. Indeed, Villeda's account of how the injuries were inflicted appears to be based on jailhouse rumors. Accordingly, with the exception of defendants' objection to Villeda's testimony that he saw decedent lying on the ground for fifteen minutes—which is based on Villeda's personal observations, Fed. R. Evid. 602—defendants' objections are SUSTAINED, since they constitute hearsay.

Finally, defendants object to excerpts of the testimony of LACSD Deputy Lovitt as, inter alia, constituting hearsay. An opposing party's statement offered against that party is not considered hearsay. Fed. R. Evid. 801(d)(2)(A). Likewise, statements offered against a party that were made by the party's agent or employee on a topic that is within the scope of the employment relationship are excluded from the hearsay rule. Fed. R. Evid. 801(d)(2)(D). Deputy Lovitt was interviewed in his capacity as an LACSD employee concerning matters within the scope of his employment—namely, disciplinary practices and housing placements. Accordingly, defendants' hearsay objections are OVERRULED.

### c.    Declaration of Dr. Ryan Abbott and Exhibits Attached Thereto

Defendants also object to the entire declaration of Dr. Ryan Abbott, an expert retained by plaintiffs to proffer opinions concerning, inter alia, decedent's cause of death, as well as the exhibits attached thereto. Defs.' Evid. Object. Abbott No. 1. The Court first addresses the admissibility of the attached exhibits, and then turns to the admissibility of Dr. Abbott's expert testimony.

Dr. Abbott attaches the following exhibits to his declaration: decedent's autopsy report (Ex.1); Providence Holy Cross Medical Center records for decedent (Ex. 2); Los

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL                                'O'

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Angeles County Fire Department records for decedent (Ex. 3); decedent's inmate medical documentation (Ex. 4); and decedent's medical records from Rancho Los Amigos National Rehabilitation Center (Ex. 5).[11]  Defendants object to these records as inadmissible hearsay.  The Court agrees, since the records are not accompanied by a declaration from a custodian or other qualified witness as required by Federal Rule of Evidence 803(6)(d).  Tate v. Kaiser Found. Hospitals, 2014 WL 176625, at *1 (C.D. Cal. Jan. 15, 2014).[12]  Dr. Abbott's testimony that he reviewed "true and correct" copies of these records does not remedy this deficiency, since Dr. Abbott lacks personal knowledge of the records and he "neither created the records nor did he testify about the circumstances of their composition."  Belber v. Lipson, 905 F.2d 549, 552 (1st Cir. 1990).  Accordingly, defendants' objections to these exhibits are SUSTAINED.  As discussed infra, however, Dr. Abbott may permissibly rely on such inadmissible documents in formulating his opinions.  See Fed. R. Evid. 703.

As to Dr. Abott's several opinions proffered by Dr. Abbott, the County contends that this testimony is inadmissible because, inter alia, it does meet the requirements for expert testimony set forth Federal Rule of Evidence 702 and calls for speculation.  Rule

---

[11] Abbott also attaches decedent's inmate complaint form (Ex. 6).  The Court previously addressed the admissibility of this complaint in connection with the declaration of Reyna Moreno, supra.

[12] While medical records are ordinarily admissible under the "business records" exception to the hearsay rule, see, e.g., Stakey v. Stander, 2011 WL 4452493, at *1 (D. Idaho Sept. 26, 2011), the facts supporting such admissibility must be supplied by a custodian of records or other competent witness, see Fed. R. Evid. 803(6)(d), 902(11).  The witness must attest, either by live testimony or in a certification, that: (1) the record was made at or near the time of the event described therein, by someone with personal knowledge, (2) the record was kept in the course of a regularly conducted activity of a business, and (3) it was a regular practice of the business to make such a record.  Fed. R. Evid. 803(6)(a)-(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**              **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Rule allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Id. Under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." Id. at 589. The Court has broad discretion in assessing both requirements. See United States v. Alatorre, 222 F.3d 1098, 1100 (9th Cir.2000). The reliability requirement ensures "that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The offering party must show by a preponderance of the evidence (1) that the expert is qualified to render the opinion and (2) that the opinion offered has adequate support. Daubert, 509 U.S. at 588-90. Expert testimony is not admissible if it is speculative. See Gen. Elec. v. Joiner, 522 U.S. 136, 146 (1997). To satisfy the relevance requirement, the proffered expert testimony must assist the trier of fact in understanding or determining a fact in issue. Daubert, 509 U.S. at 591. In assessing relevance, the Court looks to the governing substantive legal standard.

A witness' qualification as an expert must be measured with respect to the opinion the witness seeks to give. See United States v. Chang, 207 F.3d 1169, 1172-73 (9th Cir. 2000). Dr. Abbott testifies that he received his law degree from Yale Law School and his medical degree from the University of California, San Diego. Abbott Decl. ¶ 1. Although he does not provide the Court with his *curriculum vitae*, Dr. Abbott testifies that he is currently a visiting professor at the David Geffen School of Medicine at the University of California, Los Angeles (UCLA), an associate professor at Southwestern Law School, and an attending physician at Valley Community Healthcare. Id. Dr. Abbott has also served as an Attending Physician at Golden State Correctional Facility. Id. Dr. Abbott states that he has "been responsible for providing primary care, urgent care, emergency care and trauma care to patients with a broad spectrum of physical and mental health disorders," and has "diagnosed and treated . . . patients sustaining blunt force and traumatic brain injuries (TBI), and including patients with cognitive impairment subsequent to traumatic brain injuries." Id. at ¶ 2. He also states that he has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|--------------------------|------|-----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

"experience treating and managing patients within the California Department of Corrections and Rehabilitation (CDCR)."  Id.

Dr. Abbott proffers opinions concerning the following topics: (1) decedent's cause of death; (2) decedent's traumatic brain injury and resulting symptoms; (3) adequacy of the medical care provided to decedent; (4) adequacy of decedent's LASCD mental health evaluation; (5) adequacy of decedent's security classification and housing placement; and (6) the policies and customs of LACSD.  For example, Dr. Abbott's opines that "[decedent] died as a result of asphyxiation," id. ¶ 6, "[h]is death could have been prevented had the assault been interrupted prior to rendering Mr. Moreno unconscious," id., and "even after the assault concluded and [decedent] was rendered unconscious, if he had been promptly tended to and his airway repositioned, he would not have suffocated and would have survived," id.  Dr. Abbott further opines that decedent's traumatic brain injury and cognitive impairment "increased the likelihood he would be a victim of a violent crime," since his impairments "resulted in neurobehavioral problems that increased the likelihood that he would act out[.]" Id.  ¶ 13.  Dr. Abbott also opines that, based on decedent's inmate medical documentation, LACSD personnel should have discovered decedent's cognitive disorder.  Id. ¶ 8.  Additionally, he opines that decedent's "placement in the general inmate population created a serious risk of harm to him." Id. ¶ 10.

The Court concludes that Dr. Abbott is qualified to render the foregoing opinions. Dr. Abbott possesses strong medical qualifications, and his medical opinions were based on a review of, "among other documents, [decedent's] autopsy report [], records from Providence Holy Cross Medical Center [], and records from the Los Angeles County Fire Department []." Id. ¶ 7; see Kennedy v. Collagen Corp., 161 F.3d 1226, 1227, n.1 (9th Cir. 1998) ("[A] medical doctor's testimony regarding the cause of an injury may be based on experience and review of medical records only.").  Dr. Abbott's experience working in the prison system likewise renders him qualified to proffer the remaining opinions concerning the adequacy of decedent's medical care and housing placement. Abbott Decl. ¶ 13 (explaining that opinions are "[b]ased on my experience working in correctional health care.").  To the extent that defendants seek to challenge Dr. Abbott's opinions, this is an appropriate topic for cross-examination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**              **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|-------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Accordingly, defendants' objections to Dr. Abbott's expert testimony are SUSTAINED.

### d.       Supplemental Objections

In their supplemental evidentiary objections, defendants level various objections to the following: (1) the "entirety of the excerpts" of the preliminary hearing transcript, as proffered by plaintiffs; (2) the proffered excerpts of inmate Terrell Thomas' testimony; (3) the proffered excerpts of inmate Mario Cano's testimony; (4) the proffered excerpts of inmate Melvin Haynes' testimony; (5) the proffered excerpts of inmate Wydell Jefferson's testimony; and (6) the proffered excerpts of inmate Djion Vaughn's testimony.[13]

The first objection is predicated on the fact that plaintiffs have only proffered portions of the preliminary hearing transcript, which defendants contend are taken out of context.  This objection is OVERRULED as MOOT, since, as defendants point out, where a party proffers an incomplete written transcript, the opposing party may supplement the evidentiary record with the complete transcript.  Fed. R. Evid. 106; United States v. Liera-Morales, 759 F.3d 1105, 1111 (9th Cir. 2014).  Defendants have done so here.

As to the testimony of inmate Jefferson, the Court does not rely on that testimony in determining the instant motion.  Similarly, although defendants object to portions of the testimony of inmates Thomas, Haynes, and Vaughns as hearsay, lacking in foundation, or constituting improper lay and expert opinion, the Court likewise does not rely on the objected-to portions of their testimony.  Accordingly, these objections are OVERRULED as MOOT.

---

[13] Defendants also object to the proffered excerpts of the deposition of inmate Villeda.  However, these objections largely recapitulate objections to the declaration of Erin Halisy, addressed surpa, and the declarations attached thereto—namely, excerpts of the Villeda deposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Lastly, defendants' objection to inmate Cano's testimony are also OVERRULED. First, defendants object to Cano's testimony that decedent was "not in his right mind" as improper expert or lay opinion. Fed. R. Evid. 701, 702. This objection is without merit. Cano's testimony is manifestly not a medical opinion requiring medical expertise. Rather, it is based on Cano's own perceptions of decedent, it is helpful to the determination of a fact in issue—namely, whether the County was aware of decedent's cognitive impairments—and it is not based on any specialized knowledge. Fed. R. Evid. 701. Defendants' objections to the remainder of Cano's testimony are also OVERRULED as MOOT, because the Court does not rely on the objected-to evidence herein.

**2.      Plaintiffs' Section 1983 Claims**

As a preliminary matter, the County contends that plaintiffs' failure to name individual defendants requires summary adjudication of the entire action. Mot. Summ. J. at 9. Although the County is correct that a municipality "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978), plaintiffs state that they do not seek to hold the County liable "solely because it employ[s] a tortfeasor," Opp'n Mot. Summ. J. at 9. Instead, "plaintiffs are challenging the County's policies and procedures in classifying, housing and protecting [decedent] as being unconstitutional." Id.; see also FAC ¶ 16 (alleging that defendants were "obligated by the [LACSD] policies and regulations . . . to competently screen and evaluate incoming prisoners," but failed to do so with decedent); Id. ¶ 27 (alleging noncompliance with LACSD policies in failing to appropriately render emergency medical care). As the Ninth Circuit has explained, "the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights." Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994) (concluding "the municipal defendants cannot be held liable because no constitutional violation occurred."); see also, Martin A. Schwartz, Section 1983 Litig. Claims & Defenses, § 7.13[C] (2015) ("One benefit of [exclusively naming municipal entity as a party defendant] is that it enables the court to focus clearly upon the issues pertinent to municipal liability—whether a municipal policy or practice was the proximate cause of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

the deprivation of the plaintiff's federal right—without considering questions of the officer's personal liability."). Accordingly, to that extent that plaintiffs assert <u>Monell</u> claims against the County, plaintiffs' failure to name individual defendants is not fatal to these claims.

### a.      Claim for Excessive Force against Does 1-30.

Nonetheless, insofar as plaintiffs seek to hold unnamed Doe officers individually liable for constitutional violations, defendants' contentions have merit. Here, plaintiffs' third claim for excessive force expressly alleges that "Does 1-30, who are believed to be corrupt, employees of the [LACSD] assigned to work as guards at the [NCCF], perpetrated, participated in, consented to, authorized, approved and/or conspired to commit the brutal and fatal attack which resulted in the death of plaintiffs' decedent[.]" FAC ¶ 39. Nothing in the FAC indicates that this claim arises under <u>Monell</u>.

Where, as here, "the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants." <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980) (remanding to provide plaintiff opportunity to uncover identity of Doe defendant through discovery). The Court has granted multiple continuances to permit additional discovery. Nonetheless, plaintiffs are unable to name the Doe defendants—who are presumably individual LACSD deputies—allegedly responsible for authorizing or otherwise participating in the fatal attack on decedent. Moreover, even if the Court were inclined to grant plaintiffs' aforementioned motion to amend the pleadings to name Deputies Raya, Guadino, and Lovitt as defendants, plaintiffs have not proffered any admissible evidence tending to indicate that these deputies engaged in the very serious misbehavior alleged in the FAC.

In light of the foregoing, defendants' motion for summary judgment is GRANTED insofar as plaintiffs seek to impose liability on Doe LACSD deputies. Specifically, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|-------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

Court GRANTS defendants' motion for summary judgment as to plaintiffs' third claim for excessive force, which plaintiffs allege exclusively against "Does 1 through 30."[14]

### b.    Monell Claims

When a section 1983 claim is asserted against a municipality, "proper analysis requires [a court] to separate two different issues . . . : (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992). Thus, under Monell, a local government may not be held liable, even where plaintiff has suffered a deprivation of a constitutionally protected interest, unless the alleged act is performed "in execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694.

The Ninth Circuit has explained that "[a]t least two routes can lead to the conclusion that a municipality has inflicted a constitutional injury." Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1185 (9th Cir. 2002). A plaintiff pursuing the first, direct, route "show[s] that the municipality violated someone's rights or instructed its employees to do so [by] prov[ing] that the municipality acted with 'the state of mind required to prove the underlying violation,' just as a plaintiff does when he or she alleges that a

---

[14] Defendants, however, are correct that plaintiffs' characterization of their claims in opposition to the instant motion differs significantly from the characterization of their clams in the FAC. Although plaintiffs' opposition portrays their claims as claims for municipal liability, Opp'n Mot. Summ. J at 9, the allegations in FAC provide only marginal support for such liability, and plaintiffs' evidentiary proffer in support of Monell liability is likewise sparse. The Court is mindful of the inconsistency, but notes that the County assumes in its reply that plaintiffs have adequately alleged Monell claims and analyzes the claims accordingly. See generally Reply Mot. Summ. J. Moreover, although the FAC does not expressly plead Monell claims, the allegations are consistent with Monell liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|--------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

natural person has violated his federal rights." Gibson, 290 F.3d at 1185 (quoting Bd. Of Cnty. Comm'rs, 520 U.S. at 405). Under the second, indirect route, "a plaintiff need not allege that the municipality itself violated someone's constitutional rights or directed one of its employees to do so. Instead, a plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation committed by one of its employees." Id. at 1186 (citing City of Canton, 489 U.S. 378, 387-89 (1989)).

Although it is unclear from the opposition which route plaintiffs pursue, the FAC clearly alleges that the Doe defendants failed to comply with "regulations and policies adopted by the County of Los Angeles." FAC ¶¶ 10, 16, 19, 27. Accordingly, as plaintiffs have stated their section 1983 claims, the alleged deficiency is properly seen as one of omission. Thus, to impose liability against the County for its failure to act, "plaintiff must show: (1) that a county employee violated the [decedent's] constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights." Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006).

Plaintiffs allege two distinct constitutional violations giving rise to municipal liability: (1) housing decedent in general population despite his cognitive limitations; and (2) failing to provide adequate medical care to decedent on August 27, 2012. The Court addresses each alleged violation in turn.[15]

---

[15] The Court notes that decedent was a pretrial detainee at the time of his death on August 27, 2012. However, "[a]lthough the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, Bell v. Wolfish, 441 U.S. 520, 537 n.16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), we apply the same standards in both cases, Clouthier v. County of Contra Costa, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the contention that mentally ill pretrial detainees are entitled to greater protection under the Fourteenth Amendment)." Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|-------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

### i.     Conditions of Confinement

First, plaintiffs contend that the County acted with deliberate indifference with regard to decedent's housing placement, since the County's classification of decedent as "7 High Medium" security level did not account for decedent's alleged cognitive impairments. Opp'n Summ. J. at 10. As an alleged result of this deliberate indifference, plaintiff was placed among the NCCF general population, where he faced a heightened risk of being the victim of violence. Essentially, plaintiffs contend that the County was deliberately indifferent to decedent's psychiatric and medical needs.[16]

Although "a prisoner has no constitutional right to a particular classification status," Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987), prisoners have "the established right to not have officials remain deliberately indifferent to their serious medical needs," Gibson, 290 F.3d at 1187. Moreover, the "duty to provide medical care encompasses detainees' psychiatric needs." Id. "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.' " Gibson, 290 F.3d at 1187 (quoting Farmer, 511 U.S. at 837). "In order to know of the excessive risk, it is not enough that the person merely 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [] he must also draw that inference.' " Id. at 1188.

---

[16] Although not alleged in the FAC, plaintiffs also contend that the County was deliberately indifferent to decedent's safety, because he was returned to NCCF's 600 building in August 2012, even though decedent had been attacked by unidentified inmates in the 600 building in May 2012. Opp'n Summ. J. at 10-11. This allegation is another iteration of plaintiffs' claim that the County was deliberately indifferent to decedent's conditions of confinement, since—as plaintiffs contend—if decedent had been properly classified and housed in the first instance, he would not have been placed in the general population where he was more likely to be assaulted due to his cognitive impairment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

The Court concludes that there is a triable issue of fact as to whether LACSD personnel knew of, and ignored, decedent's cognitive needs. Plaintiffs proffer Dr. Abbott's expert testimony to the effect that decedent suffered a traumatic brain injury less than a year before his confinement at NCCF. As a result of this injury, decedent's mother testifies that, immediately preceding his confinement, decedent's behavior was "childlike," and he needed assistance with daily living. Moreover, inmate Mario Cano, who met decedent while they were both in custody at NCCF, testified that it was evident to him that decedent was "not all there," and "was not in his right mind." Although the County proffers evidence that decedent did not report the existence of any medical or psychiatric needs to LACSD personnel when he was admitted to NCCF and screened for classification, a jury might infer from the testimony of inmate Cano, Dr. Abbott, and decedent's mother that decedent's cognitive impairment was obvious, and, accordingly, that LACSD personnel who interacted with decedent knew of this impairment and ignored it. Moreover, Dr. Abbott opines that decedent's cognitive impairment "placed him at a heightened risk of being the victim of a violent crime." Abbott Decl. ¶ 11. Indeed, it is undisputed that NCCF does not house inmates with cognitive disorders; instead, such inmates are housed at a separate facility in downtown Los Angeles. PSMF ¶ 28; Defs.' Supp. Resp. Facts ("DSRF") ¶ 28. Accordingly, a triable issue of fact exists as to whether housing decedent in the general population at NCCF violated decedent's constitutional rights.

The Court concludes that there is also a triable issue of fact as to whether the county has customs or policies with regard to screening inmates that amount to deliberate indifference, as well as whether these customs or policies were the moving force behind the alleged violation of decedent's rights. As explained by the County in its supplemental briefing, the housing assignment process begins with an intake—the "triage" stage—during which the inmate is asked if he has any emergency medical or mental health issues requiring immediate attention. Dkt. 51 at 2. During the subsequent "classification" stage, an inmate is questioned by a classification officer regarding his medical and psychiatric needs, is evaluated in the medical clinic, and completes a 15-question survey regarding his medical and mental health. Id. at 2-3. "At times subsequent to inmate intake," the inmate is assessed by a licensed, clinical social worker. Id. at 3. With regard to channels that family and relatives of an inmate can utilize to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|-------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

report an inmate's mental health issues, "anyone who calls in a complaint or comment of this nature would have been referred to JMET (Jail Mental Evaluation Team) . . . [and] would be documented in the inmate complaint system." Id. at 4.

Here, decedent's mother avers that she repeatedly attempted to inform LACSD personnel, both in person and over the phone, of her son's cognitive disorder and medical needs. She further avers that she was told that all communication regarding decedent's health needed to be conveyed through his attorney. Such testimony supports plaintiffs contention that, contrary to County policy, such complaints are not referred to the Jail Mental Evaluation Team and documented in the inmate complaint system. A jury could conclude that such an unofficial policy, coupled with a classification system that relies primarily on inmate self-reporting, amounts to deliberate indifference.

In sum, there are triable issues of material fact going to plaintiffs' section 1983 claim based on decedent's allegedly inadequate conditions of confinement. Accordingly, the Court DENIES the County's motion for summary judgment as to this claim.

### ii.    Medical Care

Second, plaintiffs contend that County employees acted with deliberate indifference by failing to provide adequate medical care to decedent on August 27, 2012, the day of his death. Opp'n Mot. Summ. J. at 3. "The government has an obligation to provide medical care for those whom it punishes by incarceration, and cannot be deliberately indifferent to the medical needs of its prisoners." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

To establish deliberate indifference with respect to medical care, a prisoner must satisfy both the objective and subjective components of the two-part test set forth in Brennan, 511 U.S. at 834. First, a plaintiff must show he had a "serious" medical need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A "serious" medical need exists when "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," when "a medical condition . . . significantly affects an individual's daily

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

activities," or when there is "chronic and substantial pain." <u>McGuckin</u>, 974 F. 2d at 1059-60. Second, the plaintiff must show the defendants' response to the serious medical need was deliberately indifferent. <u>Jett</u>, 439 F.3d at 1096. To establish deliberate indifference, a plaintiff must show that the defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. <u>McGuckin</u>, 974 F. 2d at 1060.

The Court concludes that there is a triable issue of fact as to whether LACSD personnel were deliberately indifferent to decedent's medical needs on August 27, 2012. First, it cannot be reasonably disputed that decedent had a "serious" medical need following the August 27, 2012 assault. Second, plaintiffs proffer the testimony of inmates Villeda and Thomas, both of whom testify that decedent was left on the ground for ten to fifteen minutes before deputies arrived to provide medical assistance. Indeed, inmate Thomas testified that "it took [the deputies] a long time to get [to decedent]." Although the County proffers evidence that it took no more than five minutes for deputies to respond, this simply underscores the existence of a triable issue of fact.

Further, inmates testified that there was a "big commotion" on the prison yard when decedent was injured, which tends to undermine the County's evidence that "nothing unusual" occurred that day. Such evidence, coupled with Dr. Abbott's opinion that decedent was left "unconscious [on the prison yard] in a position that obstructed his airway and caused him to suffocate," Abbott Decl. ¶ 6, supports an inference that the deputies' delay in rendering medical care constituted deliberate indifference.

At bottom, the Eighth Amendment imposes a duty upon prison officials to render medical assistance to individuals in their custody. Notably, there is nothing in the record indicating that the deputies' delay in reaching decedent on August 27, 2012 was due to safety concerns or any other such consideration which might explain a delay. In the absence of such evidence, the Court concludes that there are triable issues of fact on plaintiffs' <u>Monell</u> claim for deliberate indifference to decedent's medical needs. Accordingly, the Court DENIES the County's motion for summary judgment as to this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|--------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

**3.     Plaintiffs' State Law Claims**

Plaintiffs also assert that defendants' actions violated both the Unruh Act, Cal. Civ. Code § 51, and the Bane Act, Cal. Civ. Code § 52.1. The Court addresses each statute in turn.

**a.     Unruh Act**

"The Unruh Act . . . is a public accommodations statute that focuses on discriminatory behavior by business establishments." Stamps v. Superior Court, 136 Cal. App. 4th 1441, 1452 (2006). The Unruh Act provides: "All persons within the jurisdiction of this state are free and equal and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). To state an Unruh Act violation independent of a claim for violation of the Americans With Disabilities Act, a plaintiff must allege, inter alia, " 'intentional discrimination in public accommodations in violation of terms of the Act.' " Earll v. eBay Inc., 2012 WL 3255605, at *4 (N.D. Cal. Aug. 8, 2012) (quoting Munson v. Del Taco, Inc., 46 Cal. 4h 661, 668 (2009) (quoting another source)).

The County contends that plaintiffs' Unruh Act claim fails as a matter of law because "there is no evidence that deputies engaged in conduct which would be characterized as discrimination against [decedent] due to any protected basis." Mot. Summ. J. at 21. In their opposition, plaintiffs do not mention the Unruh Act, let alone point to evidence of discriminatory conduct. Indeed, it is difficult to discern the nature of the discrimination complained of, since the FAC simply identifies section 51 in the heading of plaintiffs' first claim for "violation of prisoner's civil rights." FAC at 7. Because plaintiffs have failed to set forth evidence creating a triable issue of fact concerning defendants' alleged discriminatory conduct, the Court GRANTS defendants' motion for summary judgment on plaintiffs' Unruh Act claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|-------------------------|------|----------------|
| Title    | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

### b.    The Bane Act

The Bane Act allows an individual to sue "[i]f a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . ." Cal. Civ. Code. § 52.1.  Much like section 1983, the Bane Act "does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." Reynolds v. Cnty. of San Diego, 84 F.3d 1162, 1170 (9th Cir. 1996) overruled on other grounds by Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir. 1997).  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007) (citing Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998)); Venegas v. Cnty. of Los Angeles, 32 Cal. 4th 820, 843 (2004) ("[I]n pursuing relief for . . .  constitutional violations under [the Bane Act], plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion."); accord Campbell v. Feld Entm't, Inc., 75 F. Supp. 3d 1193, 2014 WL 7146462 , at *12 (N.D. Cal. 2014) ("[T]o prevail on a Bane Act claim . . . Plaintiffs must make two showings: (1) Defendants interfered with Plaintiffs' constitutional or statutory rights; and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion." (citing Venegas, 32 Cal. 4th at 842-43); Martin v. Cnty. of San Diego, 650 F. Supp. 2d 1094, 1108 (S.D. Cal. 2009) ("A claim under [] [the Bane Act] requires a showing of 'an attempted or completed act of interference with a legal right, accompanied by a form of coercion.' " (quoting Jones, 17 Cal. 4th at 334).

As with their Unruh Act claim, plaintiffs' opposition does not address their Bane Act claim.  The FAC, however, alleges that defendants violated the Bane Act by acting with deliberate indifference to decedent's medical needs on August 27, 2012.  See FAC ¶¶ 26-35.  Although the County contends that plaintiffs' Bane Act claim fails because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|---|---|---|---|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

plaintiffs have not named the County employees who intentionally interfered with decedent's constitutional rights, Mot. Summ. J. at 21, the Court concludes that this claim suffers from a different evidentiary shortcoming—namely, plaintiffs have not proffered evidence that defendants' deliberate indifference to decedent's medical needs was the result of "threats, intimidation, or coercion." Lopez v. Cnty. of Tulare, No. CV-F-11-1547, 2012 WL 33244, at *11 (E.D. Cal. Jan. 6, 2012) ("Incarceration coupled with deliberate indifference to medical and psychiatric needs does not constitute 'threats, intimidation, or coercion' for purposes of [the Bane Act]."); Brook v. Carey, 352 Fed. Appx. 184, 185 (9th Cir.2009) (affirming conclusion that prison officials' failure to timely respond to prisoner's "requests, grievances, and appeals" in connection with civil rights action alleging deliberate indifference to prisoner's medical needs did not constitute "threats, intimidation, or coercion" for purposes of the Bane Act.); Cf. Bender v. Cnty. of Los Angeles, 217 Cal. App. 4th 968, 978 (2013) ("Where, as here, an arrest is unlawful *and* excessive force is applied in making the arrest, there has been coercion 'independent from the coercion inherent in the wrongful detention itself' []—a violation of the Bane Act." (emphasis in original) (quoting Shoyoye v. County of Los Angeles, 203 Cal. App. 4th 947, 959 (2012)). Thus, because plaintiffs have not proffered evidence creating a triable issue of fact as to the existence of threats, intimidation, or coercion by defendants in connection with the alleged deprivation of decedent's right to medical care on August 27, 2012, the Court GRANTS the County's motion for summary judgment on plaintiffs' Bane Act claim.

## V.      CONCLUSION

In accordance with the foregoing, plaintiffs' motion for leave to amend the FAC is DENIED.

Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Specifically, the Court GRANTS defendants' motion for summary judgment on plaintiffs' section 1983 claim for use of excessive force, as well as on plaintiffs' claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-07570-CAS(MANx) | Date | August 3, 2015 |
|----------|--------------------------|------|----------------|
| Title | JAIME A. MORENO ET AL. V. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ET AL. | | |

for violation of the Unruh Civil Rights Act and the Bane Act.  Defendants' motion is otherwise DENIED.

IT IS SO ORDERED.

|  | 00 | : | 13 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |